**FILED**

NOV 0 1 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LAW OFFICE OF JOSEPH P. SCULLY, P.C.
   JOSEPH P. SCULLY (Bar No. 155738)
2  879 W. 190TH STREET, SUITE 400
   GARDENA, CALIFORNIA 90248
3  Tel. (310) 217-4143
   Fax (310) 329-4151
4
5  Attorney for
   CRITICAL SOLUTIONS PROTECTIVE
6  SERVICES GROUP, INC.
7
8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA
10
11  UNITED STATES OF AMERICA,            )   CASE NO. C-10-00547 CRB
                                         )
12              Plaintiff,               )   DECLARATION OF ADAM BERCOVICI IN
                                         )   OPPOSITION TO MOTION BY STACY
13      v.                               )   COHEN FOR ORDER AMENDING BAIL
                                         )   SETTING ORDER [Docket Entry No. 196]
14  SAMUEL COHEN, a/k/a Mouli Cohen      )
                                         )
15              Defendant.               )   DATE:    NOVEMBER 14, 2012
                                         )   TIME:    2:00 P.M.
16  _____  )   LOC.:    COURTROOM 6
17                   HON. CHARLES R. BREYER
18
19      I, ADAM BERCOVICI, declare as follows:
20      1.      I am over the age of 18 and of sound mind. I am one of the principals and owners
21  of Critical Solutions Protective Services Group, Inc. (hereafter "Critical Solutions"). I was
22  personally involved with all aspects concerning the management of the security detail for Samuel
23  Cohen. I have personal knowledge of the facts stated herein, and if called upon as a witness, I
24  could testify competently to the facts stated herein. I am making this declaration in opposition to
25  the motion by Stacy Cohen, purported wife of defendant Samuel Cohen, for an order amending
26  the Court's August 26, 2011 Order Setting Bail to obtain a refund of amounts paid to Critical
27  Solutions.
28

RECEIVED NOV 0 : 2012

1    2.    Between the date of the Court's August 26, 2011 Order Setting Bail, and the
2  Court's November 9, 2011 Order of Remand, Samuel Cohen spent a total of 47 days, inclusive,
3  in the custody of Critical Solutions. As originally conceived between Critical Solutions and
4  defense counsel Gary Lincenberg, Mr. Cohen's bail detail was to be a simple matter: One off-
5  duty armed police officer, 24 hours per day. That was the basis of the September 12, 2011
6  invoice which the moving party attached to her motion as Exhibit A. (Note: this invoice was
7  dated September 12, 2011, several days before Mr. Cohen was actually released into the custody
8  of Critical Solutions.) No extra costs were included, and no extra services were provided for nor
9  anticipated. According to Mr. Lincenberg, there would be no need for any management or
10  oversight fee because the Cohen security detail was to be simple and straight-forward.

11    3.    The reality of the Cohen security detail was that it was anything but simple and
12  straight-forward. From the moment he was first released, Mr. Cohen made repeated, vociferous
13  and incessant demands that Critical Solutions modify, change and alter the terms of his pre-trial
14  security provisions. I was personally and intimately involved with Mr. Cohen on these issues.
15  For example, during the months of September and October, Mr. Cohen (and often Stacy Cohen
16  as well) made it his daily practice to call me by telephone and haggle, cajole and harangue me
17  literally for up to 3-6 hours per day, with 7-10 calls per day. On one day, he called me 16
18  separate times. The purpose of these calls was to complain and to demand changes to his
19  security detail.

20    4.    The Court's September 22, 2001 Order Amending Bail Order reflects a small
21  number of the types of changes to his security detail that Mr. Cohen demanded. The subject
22  Order permits Mr. Cohen to visit the gym, to attend religious services, and to see his dentist, his
23  dermatologist, and an ENT specialist. Of course, Mr. Cohen also met regularly with his
24  attorneys. According to the September 22, 2011 Order, if Mr. Cohen is guarded by a single
25  Critical Solutions guard, he must remained handcuffed while in public places, but he may be
26  uncuffed if there are two Critical Solutions guards present. Mr. Cohen did not want to be
27  handcuffed in public, so the single guard detail almost immediately became a two guard detail at
28  least during the daylight hours.

DECLARATION OF ADAM BERCOVICI IN OPPOSITION TO MOTION BY STACY COHEN FOR ORDER AMENDING
BAIL SETTING ORDER [Docket Entry No. 196]

1        5.       According to the moving papers, Stacy Cohen claims she paid Critical Solutions

2 an initial $75,000, and then paid an additional $45,000 after the Court released Mr. Cohen a

3 second time (after he tried to bribe one of Critical Solutions' guards). Critical Solutions agrees

4 that those payments, totaling $120,000, were made. As stated above, the initial $75,000 payment

5 was based upon a simple detail consisting of one off duty police officer, 24 hours per day. But as

6 the Court's September 22, 2001 Order reflects, Mr. Cohen's detail quickly became a two guard

7 detail (during daylight hours) to accommodate his preference that he not be handcuffed while in

8 public. In addition, Critical Solutions incurred huge management oversight expenses because I

9 was forced to deal with Mr. Cohen exclusively (i.e., to the exclusion of Critical Solutions' other

10 clients) for up to 10 to 12 hours per day. Those management fees were not anticipated and were

11 therefore not reflected in moving party's Exhibit A, the September 12, 2011 invoice.

12        6.       In addition, Critical Solutions also had significant expenses which were not

13 anticipated and therefore not initially charged. For example, Mr. Cohen initially wanted to be

14 transported in Stacy Cohen's two-door Mercedes coupe. This presented an unacceptable security

15 risk, and I refused. Critical Solutions was forced to rent a Jeep Grand Cherokee at a cost of $300

16 per week, and also to pay for the vehicle's fuel. Also, for example, Critical Solutions was forced

17 to purchase and install an alarm (cost $2,950) at the house in San Francisco where Mr. Cohen

18 resided during the trial. Critical Solutions was required to fly a man to San Francisco to set up

19 the Northern California security detail, which trip included airfare, per diem, hotel, taxis, salary

20 and miscellaneous expenses, totaling $1,650.

21        7.       In addition, because of Mr. Cohen's constant demands, and changes to the

22 schedule and to his preferences, Critical Solutions also incurred overtime payments to its guards.

23 For example, if Mr. Cohen decided at the last minute that he wanted to visit his attorneys, the

24 security detail guarding Mr. Cohen was required to stay with him incurring overtime pay, while

25 the relief security detail waited at Mr. Cohen's home. This happened occasionally, but it was

26 still an expense that was not originally planned for.

27        8.       Attached hereto as Exhibit 1 is a true and correct copy of an email I sent to Gary

28 Lincenberg, Benjamin Lichtman, Allen Lew and others. This email is dated October 14, 2011,

DECLARATION OF ADAM BERCOVICI IN OPPOSITION TO MOTION BY STACY COHEN FOR ORDER AMENDING BAIL SETTING ORDER [Docket Entry No. 196]

3

1  2011, and it reflects some of the problems with billing that occurred on the Cohen security detail.
2  As noted in this email, I was dealing directly with Mr. Cohen on the billing issues. In particular,
3  all of the foregoing issues of costs and overtime and extra guards were issues that I discussed
4  with Mr. Cohen. In general, he was extremely difficult to deal with and he required me to spend
5  excessive time arguing and disputing issues with him.

6  9.  The billing arguments that I had with Mr. Cohen came to head on or about
7  October 24, 2011, because on that date I presented Mr. Cohen with two invoices, including one
8  for advance payment for the month of November, 2011. The very next day, Mr. Cohen offered a
9  $10,000 bribe to Critical Solutions' security detail manager Willie McDaniel. Mr. Cohen offered
10  to pay $10,000 to Mr. McDaniel if he would agree to work for Mr. Cohen and not Critical
11  Solutions. Mr. McDaniel reported that bribery attempt to me and as a result the Court ordered
12  Mr. Cohen to be taken into custody on October 25, 2011.

13  10.  The central premise of Stacy Cohen's motion seems to be that Critical Solutions'
14  billing to Mr. Cohen was based on the September 12, 2011 invoice (moving papers, Exhibit A).
15  That premise is in error. That invoice was issued before Mr. Cohen was released, and was only
16  an estimate based on the original "simple" model of the Cohen security detail. However, that
17  original "simple" model never was used, because Mr. Cohen demanded changes as described
18  above. As a result of those changes, Critical Solutions' costs and expenses and charges were
19  increased dramatically. Critical Solutions submitted numerous invoices to Mr. Cohen which
20  included the increased costs, fees and expenses. Some of them were paid, but many were not.
21  Ultimately, Critical Solutions made the decision to accept the $75,000 payment that Mr. Cohen
22  initially made, and the $45,000 payment that he made in compliance with the Court's October
23  28, 2011 Second Order Setting Bail. If Critical Solutions had billed Mr. Cohen for all the
24  services he actually received, his bill would have far exceeded the $120,000 which Mr. Cohen
25  paid.

26  11.  For example, Mr. Cohen paid $45,000 on or about October 28, 2011 when he was
27  released from custody after his attempted bribery. A condition of his release in the Court's
28  October 28, 2011 Second Order Setting Bail was that Mr. Cohen be guarded 24/7 by three armed

DECLARATION OF ADAM BERCOVICI IN OPPOSITION TO MOTION BY STACY COHEN FOR ORDER AMENDING
BAIL SETTING ORDER [Docket Entry No. 196]

4

1    guards from Critical Solutions. The cost of the 3 Court-ordered guards was $3,600 per day ($50

2    per hour x 3 guards x 24 hours = $3,600). Mr. Cohen was remanded after his conviction on

3    November 9, 2011 (not November 7, 2011 as Stacy Cohen claims), meaning he was guarded 11

4    days @ $3,600 per day for a total of $39,600. In addition, car rental was $300 per week, fuel

5    $100 per week, and management fees of $6,700, bringing the total expense to Mr. Cohen to

6    $47,100. He paid only $45,000 so he got off without paying everything he owed.

7          12.    Similarly, the $75,000 which Mr. Cohen paid initially is accounted for by virtue of

8    the level of services which Mr. Cohen received. Specifically, Mr. Cohen was in the custody of

9    Critical Solutions for 36 days (from September 20, 2011 through October 25, 2011, inclusive).

10    A single guard costs $1,200 per day, and the extra guard for Mr. Cohen was on duty 9 hours per

11    day, costing $450 per day. So total guard costs based on normal wages was $59,400 ($1,650 per

12    day x 36 days = $59,400). In addition, Mr. Cohen incurred the following expenses: car rental

13    $1,500 (5 weeks @ $300); fuel $500 (5 weeks @ $100); management fee $18,000 (36 days @

14    $500); guard overtime pay $3,000; costs to have guards on stand-by from 8/28 through 9/20,

15    $4,400; and miscellaneous un-reimbursed expenses $5,000, for a total of $87,400. Based on this

16    accounting, Mr. Cohen owes Critical Solutions a minimum of $18,900.

17          13.    Regarding management fees, the foregoing accounting is based on a management

18    fee of $500 per day. Originally, my understanding with Bird, Mirella was that virtually no

19    management of this security detail was required, and therefore no management fee was included

20    in the initial invoice. As noted, the original plan was torn up once Mr. Cohen was released. I

21    was forced to be on duty virtually 24 hours per day, taking as many as 10 difficult phone calls per

22    day from both Mr. Cohen and Stacy Cohen. This was constant for the duration of the time he

23    was in Critical Solutions' custody. Initially, Bird, Mirella had represented to me that Mr. Cohen

24    was not a flight risk, and the security detail would be quite easy. However, I learned from the

25    U.S. Attorney that Mr. Cohen was an extreme flight risk. As a retired law enforcement

26    professional, I took my duties and obligations to the Court quite seriously. Therefore, I was

27    required to spend huge amounts of time and effort managing the Cohen security detail. If I were

28    asked today to manage a detail similar to what was required with Mr. Cohen, I would demand at

DECLARATION OF ADAM BERCOVICI IN OPPOSITION TO MOTION BY STACY COHEN FOR ORDER AMENDING BAIL SETTING ORDER [Docket Entry No. 196]

5

1  least $1,000 per day.  Therefore, the charge of $500 per day for the amount of time and effort that

2  was required to manage a detail with people as difficult and as manipulative as Mr. Cohen and

3  Stacy Cohen is, in fact, a bargain.  Lastly, note that the $6,700 management fee mentioned in

4  paragraph 11, above, included my management fee of $5,500 (11 days @ $500) plus the

5  management fee paid to Mr. McDaniel which was $600 per week, and including all the

6  scheduling and supervision for the three security officers per day.

7       14.     For all the reasons stated herein, Critical Solutions is opposed to Stacy Cohen's

8  motion.  Mr. Cohen paid far less that what he rightfully should have paid.  There is no basis for

9  Stacy Cohen to receive any refund from Critical Solutions.  For this reason, Critical Solutions

10  respectfully requests the Court to deny her motion.

11       I declare under the penalty of perjury under the laws of the United States that the

12  foregoing is true based on my own personal knowledge.  Executed this 3/ day of October, 2012,

13  at Valencia, California.

14

15                             Adam Bercovici

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ADAM BERCOVICI IN OPPOSITION TO MOTION BY STACY COHEN FOR ORDER AMENDING
BAIL SETTING ORDER [Docket Entry No. 196]

6

## Joe Scully

| | |
|---|---|
| **From:** | Adam Bercovici <abercovici@criticalsolutionspsg.com> |
| **Sent:** | Wednesday, October 31, 2012 9:53 AM |
| **To:** | Joe Scully |
| **Subject:** | Fwd: Cohen |

---------- Forwarded message ----------
From: **Adam Bercovici** <abercovici@criticalsolutionspsg.com>
Date: Fri, Oct 14, 2011 at 9:10 AM
Subject: Cohen
To: "Gary S. Lincenberg" <gsl@birdmarella.com>, "Benjamin D. Lichtman" <bdl@birdmarella.com>
Cc: allen_lew@canpt.uscourts.gov, "Donohue, Christopher M." <Christopher.Donohue@ic.fbi.gov>, Randy
Hoffmaster <rhoffmaster@criticalsolutionspsg.com>, Willie Mc Daniel <mcdanielwillie@sbcglobal.net>

Gary,Ben: I dealt with Mouli on some invoicing issues today and he is once again being difficult to deal
with. As I stated he owes us $2680 for additional guard services and the travel to LA that we provided for he
and Stacy. This has to be paid to us by Tuesday. We are at the point where this is untenable and requiring us
to spend needles time negotiating with Mouli on financial issues. As in your business time is money and I have
not even begun to calculate what that is in terms of this project. When you and I began this project it was very
simple and I believe that we figured it to the letter to accommodate the basis requirements of what you needed
to have access to your client. Now, every day it something different with Mouli.

He wants half days, no overtime, travel to LA, get him dinner, you name it. For several weeks we dealt with
you on financial issues, now we deal with Mouli,. Now he want me to deal with you. In our business and as
stated in the court order, we are paid in advance. That means for extra services. I believe that we are at the
point where the best course of action is to go back to the judge and put all the costs that are required on the
table, get another advance to pay for all of these additional requests and allow us to do our job without this
bickering. At this point my only choice is to, starting the 24th, go back to basic service, with one guard
transporting Mouli in handcuffs to court every day. At that I will not ask for payment, but will direct Mr.
McDaniel to transport Mouli in the one guard configuration. I have cc's pre-trial to make them aware of this.

I also anticipate that in three weeks ( if the trial continues) we will need another advance for basic services as
agreed in the Court Order. The last thing that we want to be doing is haggling over this while you are in
trial. Lets get this figured out now.

Adam

--
Adam Bercovici
Principal, Chief Executive Officer
25379 Wayne Mills Place Suite 187
Valencia, CA 91355
Direct: 661-607-4324

1

Exhibit 1

Corporate: 800-278-4575
Fax: 866-403-3260
Email: abercovici@criticalsolutionspsg.com
www.criticalsolutionspsg.com

A CALIFORNIA LICENSED SECURITY FIRM
PPO 16754

--
Adam Bercovici
President and Chief Executive Officer
25379 Wayne Mills Place Suite 187
Valencia, CA 91355
Direct: 661-607-4324
Corporate: 800-278-4575
Fax: 866-403-3260
Email: abercovici@criticalsolutionspsg.com
www.criticalsolutionspsg.com

A CALIFORNIA LICENSED SECURITY FIRM
PPO 16754

1

## **PROOF OF SERVICE**

2

3          I am employed in the City and County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Law Offices of Joseph P. Scully, P.C., 879 W. 190th Street, Suite 400, Gardena, California 90248.

4

5          On October 31, 2012, I served the attached document(s) attached hereto and described as: DECLARATION OF ADAM BERCOVICI IN OPPOSITION TO MOTION BY STACY COHEN FOR ORDER AMENDING BAIL SETTING ORDER [Docket Entry No. 196] on the interested parties, by placing in a sealed envelope(s) addressed as follows:

6

7

8    Ronald P. Goldman, Esq.                    Benjamin D. Lichtman, Esq.
     Robert V. Good, Esq.                       Gary S. Lincenberg, Esq.
9    The Goldman Law Firm                       Bird, Marella, Boxer, Wolpert, Nessim, Drooks &
     Merchant Bank Building                     Lincenberg,
10   55 Main Street                             1875 Century Park East, 23rd Floor
     Tiburon, California 94929                  Los Angeles, CA 90067

11
     Lyn R. Agre, Esq.                          Hallie Mitchell Hoffman, Esq.
12   Daniel F. Cook, Esq.                       USAO, Northern District of California
     Jacob N. Foster, Esq.                      450 Golden Gate Avenue
13   Kasowith, Benson, Torres & Friedman, LLP   San Francisco, CA 94102
     101 California Street, Suite 2300
14   San Francisco, CA 94111                    Steve G. Kalar, Esq.
                                                Federal Public Defender's Office
15   Jeffrey R. Finigan, Esq.                   450 Golden Gate Avenue, 19th Floor
     United States Attorney's Office            San Francisco, CA 94102
16   450 Golden Gate Avenue, 11th Floor
     San Francisco, CA 94102

17

18   [ ]    **VIA OVERNIGHT MAIL:**
            VIA : By delivering such documents to an overnight mail service or an authorized courier in an
19          envelope or package designated by the express service courier addressed to the person(s) on
            whom it is to be served.

20   [X]    **VIA U.S. MAIL:**
            I am readily familiar with the firm's practice of collection and processing of correspondence for
21          mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on
            October 31, 2012 with postage thereon fully prepaid, at Gardena, California.

22

23   [ ]    **VIA PERSONAL DELIVERY:**
            I personally delivered such envelope(s) by hand to the offices of the addressee pursuant to CCP §
            1011.

24
     [ ]    **VIA FACSIMILE:**
25          By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below
            on this date before 5:00 p.m. 818-501-2985

26          I declare under penalty of perjury under the laws of the United States that

27   the above is true and correct and was executed on October 31, 2012, at Gardena,

28   California.

                                                    _____
                                                          Joseph P. Scully